UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARLOS NICHOLAS THOMAS, | No. CV 07-6590-DDP (PLA) |
| Petitioner, | **ORDER ADOPTING FINDINGS,** |
| v. | **CONCLUSIONS AND RECOMMENDATION** |
| WILLIAM SULLIVAN, Warden, | **OF UNITED STATES MAGISTRATE JUDGE** |
| Respondent. | |

## INTRODUCTION

On January 13, 2011, the United States Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that petitioner's First Amended Petition for Writ of Habeas Corpus be denied and the action dismissed with prejudice. Thereafter, on March 2, 2011, petitioner filed "Objections to Magistrate's Report and Recommendation" ("Objs."), and on March 15, 2011, he filed a Supplemental Exhibit to the Objections.

/

/

/

/

/

**DISCUSSION**

Petitioner in his Objections raises specific objections only to Grounds 4 and 5 of the First Amended Petition.[1]

With respect to his Ground 5, petitioner objects to the Magistrate Judge's statement that the allegedly suppressed impeachment evidence of an assault against a witness may have been the same incident that the record reflects was discussed during trial. (Objs. at 7). Even if petitioner is correct and the allegedly suppressed evidence pertained to a different assault, because the record reflects that the prosecution made every conceivable effort to discover and turn over to petitioner's counsel all available impeachment evidence pertaining to the witness in question, and that counsel had ample evidence of the witness' lengthy arrest history apart from the notes in the allegedly suppressed police report, petitioner has failed to show that any allegedly suppressed evidence was exculpatory. Moreover, although petitioner asserts in his Objections that "trial counsel at sentencing requested a continuance based on investigation into possible new evidence" (Objs. at 8), the record reflects that counsel indicated that he needed more time "because [of] my investigator's work." When the prosecutor objected that "we asked last time that we get some notice if we couldn't sentence today," counsel conceded that he could notify the court later "if I come up with some new information." (6 RT 1105). Nothing in this exchange supports a reasonable inference that counsel sought a continuance in sentencing based on the "new incident report turned over to him by the prosecution that very day." (Objs. at 8).

With respect to his Ground 4, petitioner first objects that the "record does not contain sufficient evidence on which to evaluate the straight [sic] application of Strickland or alternatively the reasonableness of the California state court's application of Strickland." (Objs. at 2). On federal habeas review, however, the Court may **only** decide whether the state courts' rejection of petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or an

---

[1] Petitioner states that he is objecting "in regard to Claims 2 and 5" but he only cites one page in the Report and Recommendation, which concerns his Ground 5, and only raises arguments pertaining to the alleged suppression of evidence. (See Objs. at 7-8).

2

1 unreasonable determination of the facts. In Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 784-85, 178 L. Ed. 2d 624 (2011), the Supreme Court recently expounded on the "doubly deferential" standard this Court must apply to a state court decision rejecting an ineffective assistance of counsel claim: "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 131 S. Ct. at 785. Accordingly, in order for petitioner to be entitled to habeas relief on any portion of his ineffective assistance of counsel claim, the Court must be prepared to find that it would have been objectively unreasonable for the California courts to have concluded that counsel's conduct fell within the wide range of reasonable professional assistance.

Petitioner specifically objects to the state court's finding that counsel's failure to move to exclude the photographic identifications was a reasonable tactical decision because: (1) when deciding "whether counsel's performance was ineffective, the Court must decide that question based on what counsel's reasons for his decisions actually were, not on the basis of what reasons he could have had for those decisions"; and (2) the state court was wrong in not addressing whether a motion to suppress the identification evidence "would have been meritorious." (Objs. at 3-4).

Both of petitioner's arguments are unavailing. First, as set forth in Strickland, petitioner must prove that his attorney's representation fell below an **objective** standard of reasonableness. Strickland, 466 U.S. at 687-88, 690. In Richter, the Supreme Court emphasized this distinction, stating that, "Strickland, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Richter, 131 S. Ct. at 790. Accordingly, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788. As discussed by the Magistrate Judge in the Report and Recommendation, this Court finds that it would not have been objectively unreasonable for counsel, rather than to move to exclude the suggestive lineup, to decide to use the problems with the photographic array as a

means to challenge the accuracy of the eyewitness identifications and to construct an argument that petitioner had been falsely identified.

Second, petitioner appears to quote from a footnote in Moore v. Czerniak, 574 F.3d 1092, 1107 n.15 (9th Cir. 2009), in arguing that, "Although a strategic reason may not be necessary for failing to make a motion that has no merit, it is certainly necessary when counsel fails to make a meritorious motion." (See Objs. at 4).[2]  This case, however, was reversed by the United States Supreme Court on January 19, 2011, by Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

Next, petitioner objects to the Magistrate Judge's finding that petitioner failed to show that the potential witnesses would have testified differently than reflected in their statements to the police and that, had they testified, such testimony would have been exculpatory.  Petitioner contends that: (1) the testimony of the witnesses as reflected in the police statements would have been exculpatory; (2) the newly obtained declaration of "eyewitness" Janae Broussard "confirms" what she told the police, and shows that she would have testified that she knew petitioner and he was not involved in the shooting; and (3) the witnesses to petitioner's "alleged confession" would have testified that "petitioner did not confess to a shooting in class or at any other time." (Objs. at 5-7).  As set forth in the Report and Recommendation, however, the record of the police investigation reflects that, in interviews conducted at the liquor store a few days after the incident, none of the potential witnesses were cooperative or recalled anything about the shooter.  Further, the transcript of the police interview of Broussard reflects that she said that she was not paying attention to the other customers, and she rather implausibly was unable to provide any description at that time of the man that she now states she "recognized" and had provided with a ride.  (See Objs., attachment).  Finally, the police report concerning the students identified as being in the group to whom petitioner was speaking when a witness overheard him bragging about the shooting indicates that several of the students claimed not to even remember who petitioner was,

---

[2] Petitioner also cites to two cases decided prior to the passage of the AEDPA with its additional level of deference in ineffective assistance of counsel claims. (See Objs. at 4, citing Kimmelman v. Morrison, 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); Tomlin v. Myers, 30 F.3d 1235 (9th Cir. 1994)).

1  thus refuting petitioner's speculation that, had counsel interviewed the students, they would have
2  testified that petitioner had not confessed to the shooting.  Consequently, it would not have been
3  unreasonable for the California courts to have concluded that petitioner had failed to show that any
4  of the potential witnesses he identified would have been willing to testify or that their testimony
5  would have been exculpatory.

6  The additional declaration submitted by petitioner as his Supplemental Exhibit is from one
7  of three fellow students to whom petitioner bragged about the murder.  In a declaration signed
8  February 20, 2011, Tracey Thompson states that he was in class with petitioner on the morning
9  of April 25, 2001, and that he did not hear petitioner talking about a shooting or a murder.
10 Thompson also states that he told the police "that no one in class ever talked about a shooting in
11 my presence."

12 Although the record reflects that, when Thompson was interviewed by the police, he told
13 them that he did not remember anyone in class talking about a shooting or a weapon, Thompson
14 also told the detectives that he did know who petitioner was.

15 At trial, two witnesses testified that Thompson was part of the group of students to whom
16 petitioner was talking the morning after the murder. Specifically, fellow classmate Rowe testified
17 that he overheard petitioner telling a group of three male students, including "Tracey" (all of whom
18 were from different gangs), that petitioner had "peeled someone's cap from Venice."  (See 4 RT
19 653-56).  The instructor, Swedlund, testified that, on the day after the murder, Rowe was sitting
20 nearby while petitioner was talking to a group of three other classmates (some of whom were
21 members of gangs), which included Tracey Thompson.  Further, Swedlund saw Thompson
22 "gestur[ing] a gunshot to the head."  (See 5 RT 786-91, 795).

23 The Los Angeles County Superior Court rejected this claim in a habeas petition and found
24 that petitioner had failed to show that counsel's decision not to call these students was not
25 "reasonable given the defense in this case and the gang baggage the witnesses may have had."
26 (See Lodged Doc. No. 13, Ex. G at 67).

27
28

Based on the fact that Thompson now purports to recall seeing petitioner on a specific day nearly ten years ago after having told the police he did not recall who petitioner was shortly after the incident, as well as on the strong corroborating evidence that the conversation that Thompson denies did take place as Rowe testified, this declaration does not alter the Court's opinion that it was not objectively unreasonable for the California courts to conclude that counsel's conduct in not interviewing this witness fell within the wide range of reasonable professional assistance.

Petitioner also seeks to have the Court "reassess the claims in conjunction with each other, and not merely for cumulative error purposes." (Objs. at 8). Petitioner, however, cites no authority, and the Court is unaware of any, that his disparate habeas claims should be considered collectively in the absence of errors to accumulate. See, e.g., Jones v. Stotts, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative-error analysis evaluates only effect of matters determined to be error, not cumulative effect of non-errors).

Finally, although petitioner objects that he is entitled to an evidentiary hearing because he has alleged facts that, if proven, would entitle him to relief and a hearing is required to resolve "factual issues" (Objs. at 2-3), the Court is able to resolve all of petitioner's claims by reference to the state court records, as well as the exhibits submitted by petitioner in support of his claims. In habeas proceedings "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved by reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise.").

Accordingly, after full consideration of the arguments raised in petitioner's Objections, the Court concludes as follows:

## CONCLUSION

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the Magistrate Judge's Report and Recommendation, and petitioner's Objections and Supplemental Exhibit thereto. The Court agrees with the recommendations of the Magistrate Judge.

/

ACCORDINGLY, IT IS ORDERED:

1. The Report and Recommendation is adopted.
2. Judgment shall be entered consistent with this order.
3. The clerk shall serve this order and the judgment on all counsel or parties of record.

DATED: October 25, 2011

_____
HONORABLE DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

7